| | |
|---|---|
| 1 | OFFICES OF NERHA AND WAAK; |
| | RICHARD W. WAAK, ATTORNEY AT LAW, |
| 2 | PLLC; BANK OF AMERICA CORPORATION, |
| | BANK OF AMERICA, NA; TD BANK, NA; |
| 3 | CITIZENS FINANCIAL GROUP, INC.; |
| 4 | CITIZENS BANK OF MASSACHUSETTS; |
| | FIDELITY CO-OPERATIVE BANK, doing |
| 5 | business as FIDELITY BANK; MIDDLESEX |
| | SAVINGS BANK; WELLS FARGO & |
| 6 | COMPANY; WELLS FARGO BANK, NA; |
| | FMR, LLC, also known as FIDELITY |
| 7 | INVESTMENTS; WADDELL & REED |
| | FINANCIAL, INC.; WADDELL & REED, |
| 8 | INC.; GLOBAL PAYROLL GATEWAY INC.; |
| 9 | INTERNATIONAL PAYOUT SYSTEMS, INC.; |
| | PROPAY, INC., doing business as |
| 10 | PROPAY.COM; BASE COMMERCE, LLC, |
| | doing business as PHOENIX PAYMENTS; |
| 11 | VANTAGE PAYMENTS, LLC; DOE INSIDER |
| 12 | PROMOTERS; DOE PROFESSIONAL |
| | SERVICES PROVIDERS; DOE BANKS; DOE |
| 13 | INVESTMENT SERVICES PROVIDERS; DOE |
| | PAYMENT PROCESSORS; and PARALEGAL |
| 14 | DOE, |
| 15 | Defendants. |

**RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE**

**MOTION TO WITHDRAW THE REFERENCE FOR ADVERSARY PROCEEDING FILED CONTEMPORANEOUSLY HEREWITH**

**AND TO TRANSFER ADVERSARY PROCEEDING TO THE EASTERN DIVISION OF THE DISTRICT OF MASSACHUSETTS**

**TOGETHER WITH SUPPORTING MEMORANDUM OF LAW**

Plaintiffs, Putative Class Representatives ANTHONY CELLUCCI, JAMILLY LAKE and GERIVALDO PACHECO, on behalf of themselves and all others similarly situated (hereafter "Plaintiffs"), by and through their undersigned counsel, move pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Massachusetts Local Bankruptcy Rule 5011-1, to withdraw the reference of Adversary Proceeding, filed contemporaneously herewith,

from the United States Bankruptcy Court for the District of Massachusetts,[1] in connection with the class action adversary case filed against Defendants TELEXFREE, INC., f/k/a COMMON CENTS COMMUNICATIONS, INC., TELEXFREE, LLC, TELEXFREE FINANCIAL, INC., (collectively referred to herein as "TelexFree"), TELEXELECTRIC, LLLP, TELEX MOBILE, HOLDINGS, INC., and others, and to refer the same to the District of Massachusetts, Eastern Division, to be heard therein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Withdrawal of the reference is governed by 28 U.S.C. § 157. In this case, withdrawal is mandatory because resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. Plaintiffs' claims alleged in the Complaint (defined below) arise under the Securities and Exchange Act of 1934, the Securities and Exchange Commission Rules, and the Securities Act of 1933, violations of Massachusetts general laws under Chapter 110A, Section 410 and Chapter 93A, Section 2, negligence, negligent misrepresentation, intentional misrepresentation, professional malpractice, breach of fiduciary duty, breach of covenant of good faith and fair dealing, unjust enrichment, fraud, aiding and abetting fraud, common law fraudulent transfer, deepening insolvency, civil conspiracy, conversion, violations of the Racketeer Influenced and Corrupt Organizations Act, United States Code, Title 18, Section 1962, and violations of the Lanham Act, United States Code, Title 15, Section 1125. Most, if not all, of the claims alleged in the Complaint do not constitute core claims. With the exception of defendant TelexFree ("Debtor"), all of the other defendants named in the Complaint are non-debtor individuals or entities. The adversary case is therefore properly subject to withdrawal pursuant to the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

To the extent that withdrawal is not mandatory, permissive withdrawal is nonetheless appropriate in this case. Judicial economy is advanced by immediate withdrawal. Plaintiff has

---

[1] Pursuant to Local Rule 5011-1, this Motion is being filed with the Clerk for the Bankruptcy Court.

demanded a jury trial and does not consent to a jury trial in the Bankruptcy Court. Pursuant to 28 U.S.C. § 157(e), Bankruptcy Court may conduct a jury trial only with consent of all parties. Moreover, Defendants include a number of non-debtor individuals and entities.

The Plaintiff's further request that the matter be transferred to the Eastern Division of the District of Massachusetts, pursuant to 28 U.S.C. § 1404(b), on the grounds of judicial economy, convenience of the Parties, availability of witnesses and evidence, and proximity to the locations and events giving rise to the Plaintiffs' causes of action.

## II.   RELEVANT FACTS

### BACKGROUND

TelexFree uniformly held itself out as a "multi-level marketing" company systematically selling local and international telephone service plans that use "voice over internet protocol" ("VoIP") technology through so-called "Promoters."[2] The TelexFree VoIP was not patented or proprietary, and offered nothing more than what was otherwise available for free through other Internet providers – for example, Skype and Google Voice.

In the Complaint, Plaintiffs allege that TelexFree's offer and sale of investment contracts constituted a pyramid-type Ponzi scheme (the "Pyramid Ponzi Scheme"). In the Complaint, Plaintiffs further alleged that to carry out their unlawful enterprise, TelexFree and their officers, agents, servants and employees sold fraudulent unregistered securities to the Putative Class Representatives and to the members of the class the Representatives seek to represent. Telexfree sold unregistered securities in twenty-one states and internationally from its offices in Marlborough, Massachusetts.[3]

Plaintiffs further assert in the Complaint that the contract pursuant to which TelexFree enlisted new Investors and guaranteed returns on investment is illegal and void as a matter of law. TelexFree's unregistered securities were deceptively and uniformly identified to all members of the putative class as "memberships." TelexFree guaranteed returns of 200% or more

---

[2] Merriam-Webster's Dictionary defines a "promoter" as a person or organization that helps something to happen, develop, or increase.

[3] Because all sales were processed through their Massachusetts office, Massachusetts state law applies including MGL 110A, Sec. 410, MGL. 110A, Sec. 410(b) and MGL 93A.

- 4 -

22

per year. In exchange for copying and placing duplicative and pre-written TelexFree ads on internet sites – a passive process that alone generates no revenue and requires essentially no effort on the part of the investors – and for recruiting other investors to pay the membership fees, TelexFree held out that its investors, or "Promoters," could receive significant returns of over 200% annually.

TelexFree uniformly and systematically did not require Promoters to sell its VoIP product in order to qualify for payments prior to March 9, 2014. TelexFree's scheme constitutes an unlawful pyramid scheme because the proceeds from the sale of TelexFree's VoIP product alone could not sustain the massive pay structure. To keep TelexFree's Pyramid Ponzi Scheme liquid, a constant influx of new participants paying "membership fees" was required.

On June 19, 2013, the Brazilian Court in Acre issued an injunction putting "a stop to TelexFree's business operations, including the registration of new affiliate investors, acceptance of new investments and paying any returns owed on existing affiliate investments."[4] According to the Complaint, at all relevant times, TelexFree and its Officers, James M. Merrill, Carlos N. Wanzeler, Steven M. Labriola, Carlos Costa, Joseph H. Craft, a/k/a Joe H. Craft (collectively, "Defendant Officers"), Named Insider Promoters[5], the Doe Insider Promoters, the Doe Paralegal, TelexFree's Retained Licensed Professionals[6], Banks and Financial Institutions[7], and Payment Processing Services Companies[8] knew that the Pyramid Ponzi Scheme was not sustainable, and

---

[4] Brazilian Court Suspends TelexFree's Operations, Behind MLM (June 20, 2013). http://behindmlm.com/companies/telexfree/brazilian-court-suspends-telexfree-operations/.

[5] Sanderley Rodrigues De Vasconcelos; Www Global Business, Inc.; Santiago De La Rosa; Randy N. Crosby and Faith R. Sloan

[6] Attorneys Gerald P Nehra, Esq, individually and doing business as the Law Offices of Nehra and Waak; Gerald P Nehra, Attorney at Law, PLLC; Richard W. Waak individually and doing business as the Law Offices of Nehra and Waak; Richard W. Waak Attorney at Law, PLLC; Joe H. Craft individually and d/b/a as Certified Public Accountant; Craft Financial Solutions, LLC as well as the Defendant Banks are referred to herein as "Retained Licensed Professionals" or "RLP."

[7] Bank Of America Corporation, Bank Of America, Na; Td Bank, Na; Citizens Financial Group, Inc.; Citizens Bank Of Massachusetts; Fidelity Co-Operative Bank, Doing Business As Fidelity Bank; Middlesex Savings Bank; Wells Fargo & Company; Wells Fargo Bank, Na, FMR, LLC, Also Known As Fidelity Investments; Waddell & Reed Financial, Inc.; Waddell & Reed, Inc.;

[8] Global Payroll Gateway Inc., International Payout Systems, Inc., and Propay, Inc., doing business as PROPAY.COM, are referred to herein as "Payment Process Services Companies" or "PPSC."

23

that the representations on Telefree's website and in its marketing materials were false, unfair, and deceptive including, but not limited to, those concerning the guaranteed returns.

At all relevant times as averred in the Complaint, TelexFree and its Defendant Officers, Names Insider Promoters, the Doe Inside Promoters, Paralegal Doe, its Banks and Financial Institutions, its Retained Licensed Professionals and Payment Processing Services Companies knew that TelexFree was selling unregistered securities to the members of the putative classes and each participated in the advancement of the fraud. After the shut down in Brazil the Defendant Officers, Names Insider Promoters, the Doe Inside Promoters, Paralegal Doe, its Banks and Financial Institutions, its Retained Licensed Professionals and Payment Processing Services Companies knew that TelexFree was an illegal pyramid-type Ponzi scheme which involved the illegal sale of securities, yet they targeted a United States based market from their Marlborough Massachusetts world head quarters and continued to aid, abet and further such illegal activities.

According to the Complaint, despite the extensive knowledge that they were running a Pyramid type Ponzi scheme including first hand knowledge of the judicial findings in Brazil, TelexFree and the other Defendants continued to participate in the attraction and processing of new investors, continued to allow payments to process through TelexFree's accounts, allowed TelexFree to continue to illegally sell securities and further its illegal Pyramid Ponzi Scheme, and otherwise continued to further TelexFree's illegal activities.

**BANKRUPTCY**

On April 14, 2014, the Defendants TelexFree, Inc., TelexFree, LLC and TelexFree Financial, Inc. filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court, District of Nevada, pending as Case No. BK-S-14-12524-ABL (the "Bankruptcy"). On May 6, 2014 the United States Bankruptcy Court for the District of Nevada transferred the foregoing bankruptcy action to the District of Massachusetts, Central Division.

**ADVERSARY COMPLAINT**

On May 14, 2013, and by Complaint filed contemporaneously with the herein Motion, Plaintiffs commenced a class action complaint ("Complaint") for, *inter alia*, violations of state

- 6 -

24

and federal securities law. In the Complaint, Plaintiffs allege that at all relevant times Defendants violated the antifraud and securities registration provisions of the federal and state securities laws. Plaintiffs further allege in the Complaint that from at least in or about January 2012 through approximately April 15, 2014, TelexFree and the other Defendants unlawfully, willfully and knowingly used the means and instrumentalities of interstate commerce and the mails, directly and indirectly, in connection with the purchase and sale of unregistered securities.

In the Complaint, Plaintiffs allege TelexFree and the other Defendants used and employed manipulative and deceptive devices and contrivances in violation of MGL 110A, Sec. 410; used means and instrumentalities, directly and indirectly, in connection with the purchase and sale of unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of, *inter alia*, the Massachusetts Uniform Securities Act, MGL c. 110A, Section 410b, MGL 110A, Sec. 410(b) and MGL 93A. According to the Complaint, TelexFree and the other Defendants also violated Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

As set forth in the Complaint, TelexFree and the other Defendants willfully or knowingly established a pyramid-type Ponzi scheme by paying certain investors purported returns on investment. Plaintiffs allege that TelexFree made use of this sophisticated pyramid scheme, and defrauded the members of the putative class out of funds exceeding $300,000,000.00 dollars in just a few short years. Pursuant to the Complaint, the Defendants share joint and severable liability, including its Officers, Named Insider Promoters, Doe Inside Promoters, the licensed professionals such as the RLP Defendants, including certified public accountants and lawyers that specialized in sheltering so-called Multi-Level Marketing schemes, as well as TelexFree's banks, investment services providers, and payment processors for having aided and abetted TelexFree's Pyramid Ponzi Scheme by providing TelexFree with legal and financial advice and

1 | assistance during the course of the fraud, despite knowledge of the fraudulent nature of
2 | TelexFree's operation.
3 |     Plaintiffs further alleged that the Payment Processing Services Companies and Bank and
4 | Financial Institution Defendants also share joint and several liability having aided and abetted the
5 | fraudulent and illegal activity by providing financial and payment processing services, while also
6 | having knowledge of TelexFree's fraud. In the Complaint, Plaintiffs seek compensation for
7 | economic loss sustained as a result of Defendants' conduct in carrying out an unlawful Ponzi
8 | pyramid scheme that included, *inter alia*, Defendants' fraudulent unregistered offer and sale of
9 | securities in the form of unregistered investment contracts constituting securities.
10 |     Specifically, Plaintiffs' Claims for Relief sound in violations of: (i) Section 10(B) of the
11 | Securities and Exchange Act of 1934 and Securities and Exchange Commission Rule 10B-5; (ii)
12 | Section 20(A) of the Securities and Exchange Act of 1934 and Section 15 of the Securities Act of
13 | 1933.

### III. LEGAL ARGUMENT

15 |     Withdrawal of the reference is required under 28 U.S.C. § 157 and governing Supreme
16 | Court and Ninth Circuit precedent. Even if such withdrawal were discretionary, all of the factors
17 | courts consider in deciding a motion to withdraw heavily favor withdrawal here. Finally, judicial
18 | efficiency compels withdrawal, because none of the Plaintiffs' claims can be finally adjudicated
19 | by the Bankruptcy Court.
20 | **A.    Mandatory Withdrawal of the Reference.**
21 |     District Courts have original jurisdiction over all cases under the Bankruptcy Code and
22 | may refer to Bankruptcy Judges any case arising under Title 11. <u>See</u> 28 U.S.C. §§ 157(a),
23 | 1334(b). The District Court also has the power to withdraw the reference of a case or proceeding
24 | from the Bankruptcy Court. 28 U.S.C. § 157(d). Under the provision requiring mandatory
25 | withdrawal of the reference under Section 157, the district court shall, on timely motion of a
26 | party, so withdraw a proceeding if the court determines that resolution of the proceeding requires
27 | consideration of both title 11 and other laws of the United States regulating organizations or
28 | activities affecting interstate commerce. <u>See</u> 28 U.S.C. § 157(d).

- 8 -

26

Specifically, the second sentence of section 157(d) requires that the reference be withdrawn if the proceeding which was referred under section 157(a) "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." See Block v. Anthony Tammaro, Inc. (In re Anthony Tammaro, Inc.), 56 B.R. 999 (D.N.J. 1986) (disagreeing with the contrary conclusion reached in *In re White Motor Corp.*, 42 B.R. 693, 699-701 (N.D. Ohio 1984)). According to Collier on Bankruptcy, perhaps Congress had in mind that district judges, who consider certain types of matters on a daily basis, are better equipped to determine them than are bankruptcy judges, whose knowledge of and expertise with respect to civil proceedings involving the labor laws or securities laws, for example, may have been. Sullivan v. Hiser (In re St. Mary Hosp.), 115 B.R. 495 (E.D. Pa. 1990); Judge v. Ribley & Schweigert (In re Leedy Mortgage Co.), 62 B.R. 303 (E.D. Pa. 1986).

The appropriate rule of construction of section 157(d) should combine the "substantial and material" rule with a requirement that interpretation of both the Code and non-Code federal statute be required for resolution of the controversy.[9] See American Tel. & Tel. Co. v. Chateaugay Corp., 88 B.R. 581 (S.D.N.Y. 1988); Carter Day Indus., Inc. v. United States Envtl. Protection Agency (In re Combustion Equip. Assocs., Inc.), 67 B.R. 709 (S.D.N.Y. 1986), which

---

[9] An initial reading of the second sentence discloses that there are two prerequisites to mandatory withdrawal. The first is that resolution of the civil proceeding requires "consideration ... of title 11." See 1-3 Collier on Bankruptcy P 3.04 (16th ed. Rev. 2014). The second is that resolution of the civil proceeding requires "consideration ... of other laws of the United States regulating organizations or activities affecting interstate commerce." Id. Another way of saying this is that the sentence dealing with mandatory withdrawal contains the words "both" and "and." The same statutory requirements apply when the reference is withdrawn *sua sponte*. Id. (citing South Street Seaport Ltd. P'ship v. Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996)). However, many cases have ignored the language of the statute and have found that withdrawal does not depend upon the presence of a title 11 issue at all but instead that the sole requirement for mandatory withdrawal is that resolution of the dispute will require a "substantial and material consideration of" the non-Code statute and when that statute has more than a *de minimus* effect on interstate commerce. Id. By way of illustration, in *Michigan Milk Producers Association v. Hunter*, 46 B.R. 214 (N.D. Ohio 1985), a trustee filed antitrust counterclaims in response to a complaint filed by a secured creditor seeking determination of its rights. The district court withdrew the reference, finding that resolution of the proceeding will "require substantial and material consideration of [the] federal antitrust claim." Id. at 216.

In *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949 (7th Cir. 1996), the Panel held that withdrawal is mandatory when the case requires the "substantial and material consideration" of the non-Code federal law, concluding that "mandatory withdrawal is required only when [the non-title 11] issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." Id.; see also Shugrue v. Air Line Pilots Ass'n, Int'l (*In re* Ionosphere Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990); United States v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 295 B.R. 222 (D.N.J. 2003) (issues of first impression under certain provisions of Internal Revenue Code); Revere Copper & Brass, Inc. v. Acushnet Co. (In re Revere Copper & Brass, Inc.), 169 B.R. 87 (S.D.N.Y. 1994).

-9-

according to Collier on Bankruptcy, such a result would certainly be in accord with the clear meaning rule laid down by the Supreme Court in United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989).

In the present case, the SEC claims, claims arising under the Racketeer Influenced and Corrupt Organizations Act, United States Code, Title 18, Section 1962, and claims arising under violations of the Lanham Act, United States Code, Title 15, Section 1125, as set forth in the Complaint are subject to mandatory withdrawal under the second sentence of 28 U.S.C. § 157(d). Mandatory withdrawal is appropriate for these federal claims for two reasons. First, the resolution of these issues will require a "substantial and material consideration of" the non-Code statutes, where the SEC, Racketeering and Lanham Act statutes at issue here have more than a de minimus effect on interstate commerce. Second, interpretation of both the Code and non-Code federal statutes are necessary for resolution of the controversy. Thus, cause exists for mandatory withdrawal based upon the nature of the claims for relief alleged in the Complaint.

**B.    Withdrawal of the Reference Is also Appropriate Where a Jury Trial Demand has Been Made, but the Parties do not all Consent to the Bankruptcy Court Conducting the Jury Trial.**

Under 28 U.S.C. § 157(e), the Bankruptcy Court lacks the authority to conduct a jury trial on a referred matter absent "the express consent of all the parties." Id.; see also Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 563, 569 (9th Cir. 2012), cert. granted, 133 S. Ct. 2880 (2013); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1194 (9th Cir. 2003) ("[T]he bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and the district court."); Taxel v. Elec. Sports Research (In re Cinematronics, Inc.), 916 F.2d 1444, 1451 (9th Cir. 1990) (same). Accordingly, where there is a jury trial demand and the parties do not unanimously consent to a jury trial in the Bankruptcy Court, the District Court is required to withdraw the reference.

Here, withdrawal is appropriate because Plaintiffs have demanded a jury trial. Plaintiffs have brought "non-core claims" arising from the securities claims, claims arising under Massachusetts law, and claims for negligence, negligent misrepresentation, intentional misrepresentation, professional malpractice, breach of fiduciary duty, breach of covenant of good

- 10 -

28

faith and fair dealing, unjust enrichment, fraud, aiding and abetting fraud, common law fraudulent transfer, deepening insolvency, civil conspiracy, conversion, violations of the Racketeer Influenced and Corrupt Organizations Act, United States Code, Title 18, Section 1962, violations of the Lanham Act, United States Code, Title 15, Section 1125. See Complaint. Most, if not all, of Plaintiffs' claims are non-core securities and tort claims. Id. Plaintiffs seek a jury trial, but do not consent to the Bankruptcy Court presiding over the jury trial, and do not consent to the entry of any final orders by the Bankruptcy Court. Thus, to the extent any of the claims alleged in the Complaint are deemed core claims, such claims likewise cannot be tried by the Bankruptcy Court under governing Supreme Court and Ninth Circuit precedent. Accordingly, the Bankruptcy Court lacks the authority to finally adjudicate this case, and the District Court should withdraw the reference for trial and all pretrial proceedings, as set forth in greater detail below.

**C.    Alternatively, to the Extent Mandatory Withdrawal is not Applicable, Permissive Withdrawal of the Reference Is Appropriate**

The reference may also be withdrawn for cause pursuant to 28 U.S.C. § 157(d), which provides that the "district court may withdraw, in whole or in part, any case or proceeding referred . . . on its own motion or on timely motion of any party, for cause shown."

Courts consider several factors to determine whether a reference should be withdrawn for cause: "[(1)] efficient use of judicial resources (which is enhanced [by withdrawal] when non-core issues predominate), [(2)] delay and costs to the parties, [(3)] uniformity of bankruptcy administration, [(4)] the prevention of forum shopping, and other related factors." Herbst Gaming, Inc. v. Insurcorp (In re Zante, Inc.), No. 3:10-cv-231-RJC-RAM, 2010 WL 5477768, at *4 (D. Nev. Dec. 29, 2010) (quoting Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1008 (9th Cir. 1997)); see also Orion Pictures Corp. v. Showtime Network, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1100–01 (2d Cir. 1993) (listing same factors). Courts also consider whether the claims at issue are non-core and whether there will be a jury trial. See Heller Small Bus. Lending Corp. v. Smead (In re O'Hanneson),

- 11 -

Nos. 5:12-cv-04068 EJD, 12-53343 ASW, 2013 WL 655158, at *4 (N.D. Cal. Feb. 21, 2013). All of these factors weigh in favor of withdrawal in this case.

### 1. Judicial efficiency favors withdrawal of the reference.

Judicial efficiency favors withdrawal of the reference in this case, because the Bankruptcy Court lacks the authority to finally adjudicate this case, so any proceedings in the bankruptcy court will necessarily require additional proceedings, including *de novo* review, in the District Court. Withdrawal will avoid such duplicative proceedings.

#### a. The Bankruptcy Court lacks the authority to finally adjudicate this matter.

The Bankruptcy Court lacks the authority to finally adjudicate any of the claims in this case. Thus, the goal of judicial efficiency is furthered by proceeding in the District Court in the first instance, rather than requiring re-litigation and review of non-final Bankruptcy Court proposed findings.

First, as discussed above, the Bankruptcy Court cannot conduct a jury trial in this case. This weighs in favor of withdrawal because the case ultimately must be tried in the District Court. See, e.g., In re Cinematronics, Inc., 916 F.2d at 1451 (agreeing with "several courts [that] have concluded that where a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate").

Second, the Bankruptcy Court lacks the power to enter final judgments on any of the Plaintiffs' claims. Instead, it may only enter proposed findings of fact and conclusions of law that are subject to *de novo* review by the District Court. This limitation is firmly established as to Plaintiffs' non-core claims.[10] See 28 U.S.C. § 157(c). It also applies to any of the claims deemed core claims, following the Supreme Court's holding in Stern v. Marshall, 131 S. Ct. 2594 (2011). In Stern, the Court held that Article III prohibits Bankruptcy Courts from entering final judgments on certain core claims. See Stern v. Marshall, 131 S. Ct. at 2608 (counterclaim against estate under 28 U.S.C. § 157(b)(2)(C)). The Ninth Circuit has held that Stern applies to

---

[10] The Plaintiffs' non-core claims include the SEC, Racketeering, Lanham Act and tort claims.

claims for fraudulent transfer (Seventeenth Claim for Relief), thus prohibiting the Bankruptcy Court from entering final judgment on such claims without the consent of the parties. See In re Bellingham Ins. Agency, Inc., 702 F.3d at 561–62 (discussing Stern v. Marshall, 131 S. Ct. 2594 (2011), and Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989)). Under the same limitations governing non-core claims, the Bankruptcy Court can only issue proposed findings on the Plaintiffs' fraudulent transfer claim that are subject to *de novo* review by the District Court. Id. at 565–66.

Numerous cases have recognized that this inefficient process—which requires two courts to invest themselves in one case and forces the parties to litigate matters twice—can and should be avoided by withdrawing the reference and proceeding with the case in District Court. See, e.g., Sec. Farms, 124 F.3d at 1009 ("unnecessary costs could be avoided by a single proceeding in the district court"); In re Orion Pictures Corp., 4 F.3d at 1101 ("the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court"); Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 462 B.R. 457, 469, 472 (S.D.N.Y. 2011) ("It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated"); Coe-Truman Techs., Inc. v. United States (In re Coe-Truman Techs., Inc.), 214 B.R. 183, 187 (N.D. Ill. 1997) (because bankruptcy court's decision is subject to *de novo* review, it is more efficient for district court to decide case in the first instance). Conducting pre-trial matters in the District Court will avoid such inefficiency.[11]

---

[11] The inefficiencies posed by this process could be further amplified in this case in light of the Supreme Court's grant of *certiorari* in the *Bellingham* case on June 24, 2013. Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 133 S. Ct. 2880 (2013). Based on the questions presented by the parties, the Supreme Court's decision will address a Circuit split as to whether the Bankruptcy Court has statutory authority to enter proposed findings of fact and conclusions of law on core claims. Compare In re Bellingham Ins. Agency, 702 F.3d at 565 (Bankruptcy Court may issue report and recommendation on core claim), with Ortiz v. Aurora Health Care, Inc. (In re Ortiz), 665 F.3d 906, 915 (7th Cir. 2011) (Bankruptcy Court may not issue report and recommendation on core claim); see also Petition for Writ of Certiorari, In re Bellingham Ins. Agency, Inc., No. 12-1200, 2013 WL 1329527 (U.S. Apr. 3, 2013). Should the Supreme Court reverse *Bellingham* and adopt the Seventh Circuit's reasoning, the validity of any proposed findings issued by the Bankruptcy Court on the core claim would be uncertain and possibly subject to challenge.

    **b.**   **Withdrawal is efficient because it permits the District Court to become familiar with facts before presiding over trial.**

  Judicial efficiency is also served by allowing the District Court to conduct the pretrial proceedings, and thus familiarize itself with the facts, when it will ultimately preside over the trial. See, e.g., Midway Venture, Inc. v. Gladstone (In re Pacers, Inc.), No. 11-cv-1401-L BGS, 2012 WL 947956, at *4 (S.D. Cal. Mar. 20, 2012); CM Capital Servs., LLC v. Stewart Title of Nev., No. 2:10-CV-317-JCM (LRL), 2010 WL 4606523, at *2 (D. Nev. Nov. 5, 2010) (Mahan, J.); Wellman Thermal Sys. Corp. v. Columbia Cas. Co., No. 105CV-01191-JDT-TAB, 2005 WL 4880619, at *3 (S.D. Ind. Oct. 5, 2005) ("efficiencies would be lost were the bankruptcy court to proceed with pretrial matters; the district court would not gain a valuable familiarity with the case that could assist it leading up to and through trial"); In re Coe-Truman Techs., Inc., 214 B.R. at 187; Zahn v. Yucaipa Capital Fund (In re Almac's, Inc.), 202 B.R. 648, 659 (D.R.I. 1996). This factor applies in this case because the District Court will preside over the jury trial, and due to the complexity of the litigation sounding in SEC and tort claims, and the class action nature of the action, judicial efficiency is best served by withdrawal of the reference.

  **2.**   **Withdrawal will prevent delay and reduce costs.**

  Withdrawing the reference will prevent delay and reduce costs. All of the parties will be saved the cost and delay of having to re-litigate decisions by the Bankruptcy Court on *de novo* review in the District Court. See Sec. Farms, 124 F.3d at 1008–09; In re Zante, Inc., 2010 WL 5477768, at *7. Moreover, the parties will be spared the duplicative costs of familiarizing the District Court with the extensive facts of this case after familiarizing the Bankruptcy Court with the same matters.

  **3.**   **Withdrawal will not interfere with the uniform application of bankruptcy administration.**

  Withdrawal of the adversary proceeding will not interfere with the uniformity of bankruptcy administration. Plaintiffs' non-core claims, including the SEC and tort claims, as well as the claims arising under Massachusetts state law, do not implicate issues of bankruptcy law, and these non-bankruptcy claims predominate in this litigation. See Sec. Farms, 124 F.3d at

- 14 -

1008; <u>In re Zante, Inc.</u>, 2010 WL 5477768, at *6–7 (uniformity of bankruptcy administration is not undermined by withdrawal of adversary case in which eight out of nine causes of action were non-core). Further, under governing Ninth Circuit precedent, only the District Court can render a final judgment on Plaintiffs' core claims. See <u>In re Bellingham Ins. Agency</u>, 702 F.3d at 565.

### 4. Judicial Efficiency Is Best Served by the District Court Conducting All Pretrial Activity.

For the same reasons that the reference should be withdrawn, the District Court should conduct all pre-trial matters in this case. The District Court will have to preside over this action because Plaintiffs demanded a jury trial on all claims and Plaintiffs do not consent to a trial in the Bankruptcy Court. Although the Court has discretion to delay withdrawal until *de novo* review or trial is required, see <u>Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)</u>, 504 F.3d 775, 787–88 (9th Cir. 2007), the District Court's familiarity with the substance of this matter strongly weigh in favor of the District Court conducting pre-trial matters itself. See <u>Boyd v. GMAC Mortg. LLC</u>, No. C 11-5018 PSG, 2012 WL 1424992, at *2 (N.D. Cal. Apr. 24, 2012) (finding that reference to Bankruptcy Court for pre-trial proceedings was not "in the interest of judicial efficiency"); <u>Dev. Specialists</u>, 462 B.R. at 472 (recognizing efficiencies gained from conducting pre-trial proceedings in District Court). In contrast, there would be no benefit to having pretrial proceedings in related cases bifurcated between two different courts.

As recognized by the court in *Development Specialists*,

> Because the Bankruptcy Court is not able to finally determine these proceedings without the consent of the [defendants]—which does not appear to be forthcoming—any recommendations it makes will need to be reviewed *de novo* in this Court. It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated [in the district court].

462 B.R. at 472; see <u>Boyd v. GMAC Mortg. LLC</u>, No. C 11-5018 PSG, 2012 WL 1424992, at *2 (N.D. Cal. Apr. 24, 2012) (having bankruptcy court resolve all pretrial matters and then report on case status to district court is waste of judicial resources and should be avoided).

By allowing the District Court to oversee all of the litigation, the District Court will be able to streamline issues and discovery. See <u>Heller Small Bus. Lending Corp. v. Smead (In re O'Hanneson)</u>, Nos. 5:12-cv-04068 EJD, 12-53343 ASW, 2013 WL 655158, at *4 (N.D. Cal. Feb.

- 15 -

21, 2013); In re Pilgrim's Pride Corp., 415 B.R. at 637; In re Comdisco, Inc., 2004 WL 2674398, at *2.

**D.    Reference to the Eastern Division of the United States District Court for the District of Massachusetts**

Judicial economy, convenience of the Parties, availability of witnesses and evidence, and proximity to the locations and events giving rise to the Plaintiffs' causes of action favors reference of the present matter to the Eastern Division of the United States District Court for the District of Massachusetts.

Pursuant to 28 U.S.C. § 1404(b), a matter may be transferred, upon motion and within the discretion of the court, to another division within the same district. In the present case, transfer of the Plaintiffs' adversary proceeding to the Eastern Division is warranted, as:

a. The putative Class Representatives all reside in eastern Massachusetts;

b. Most of the people adversely affected by the Defendants' actions, who would comprise the putative Class, and who reside in Massachusetts, are residents of eastern Massachusetts;

c. Most of the witnesses in this matter who reside in Massachusetts are, and will continue to be, residents of eastern Massachusetts;

d. The Defendant, TelexFree's, principal place of business was located in Marlborough, a city in Middlesex County in eastern Massachusetts;

e. Most of the Defendants in the adversary proceeding that maintain a Massachusetts office do so in eastern Massachusetts;

f. The Eastern Division is in closer proximity to important evidence, including non-electronic and electronic records, offices, and computer equipment.

Transfer of the adversary proceeding to the Eastern Division will therefore permit greater judicial efficiency and significantly increase the convenience to the Parties and witnesses.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the reference of the Plaintiffs' adversary proceeding to the Bankruptcy Court be withdrawn and that the District Court conduct all judicial proceedings up to and through trial.

Respectfully submitted,

Dated this 15th day of May, 2014.

**Dropkin & Matza, LLP**

_____
Martin B. Dropkin, Esq.
B.B.O. # 136120
Dropkin & Matza, LLP
424 Broadway
Somerville, MA 02145
(P) 617-623-4600
(F) 617-623-7315
mdropkin@dropkinmatza.com

*Attorneys for Anthony Cellucci, Jamilly Lake and Gerivaldo Pacheco – putative class representatives and those similarly situated*